**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

LUCY A. T.,                          )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )          1:22CV761
                                     )
MARTIN J. O'MALLEY,                  )
Commissioner of Social               )
Security,                            )
                                     )
                    Defendant.[1]    )


**<u>MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff, Lucy A. T., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 15; <u>see also</u> Docket Entry 11 (Plaintiff's Brief), Docket Entry 16 (Commissioner's Memorandum), Docket Entry 17 (Commissioner's "Notice of Supplemental Authority"), Docket Entry 18 (Plaintiff's Reply), Docket Entry 19 (Commissioner's "Second

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Notice of Supplemental Authority")). For the reasons that follow, the Court should enter judgment for the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 359-63), alleging a disability onset date of November 18, 2018 (see Tr. 359, 362). Upon denial of those applications initially (Tr. 214-35, 262-72) and on reconsideration (Tr. 236-59, 275-92), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 293-94). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 191-213.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 144-59.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 8-138, 160-90, 356-58, 438-41), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through June 30, 2022.

2. [Plaintiff] has not engaged in substantial gainful activity since November 18, 2018, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: major dysfunction of the joints; spine disorder; obesity; and essential hypertension.

. . .

2

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

.  .  .

5.  .  .  . [Plaintiff] has the residual functional capacity to perform light work . . . except she can lift and carry 25 pounds occasionally and frequently; [Plaintiff] can frequently climb ramps, stairs, ladders, ropes, and scaffolds; and she can frequently balance, kneel, crouch and crawl.

.  .  .

6.  [Plaintiff] is capable of performing past relevant work as a meter reader. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity.

.  .  .

In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform, considering [Plaintiff]'s age, education, work experience, and residual functional capacity.

.  .  .

7.  [Plaintiff] has not been under a disability, as defined in the [] Act, from November 18, 2018, through the date of this decision.

(Tr. 149-55 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely

3

limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal

4

brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." <u>Id.</u> at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. <u>See id.</u> at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<u>e.g.</u>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in
(continued...)

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "the ALJ failed to respond to [Plaintiff]'s request to keep the record open for submission of additional evidence, instead simply closing the record with no explanation" (Docket Entry 11 at 3 (block formatting, initial capitals, and underscoring omitted); see also Docket Entry 18 at 1-3);

2) "the ALJ failed to assist [Plaintiff] in developing the medical evidence of record" (Docket Entry 11 at 6 (block formatting, initial capitals, and underscoring omitted); see also Docket Entry 18 at 3-5); and

3) "the ALJ and Appeals Council judges had no legal authority to adjudicate this case because they were not properly appointed" (Docket Entry 11 at 10 (block formatting, initial capitals, and underscoring omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 16 at 4-25.)

---

[5] (...continued)
the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. Request to Hold Record Open

In Plaintiff's first issue on review, she argues that "the ALJ failed to respond to [Plaintiff]'s request to keep the record open for submission of additional evidence, instead simply closing the record with no explanation." (Docket Entry 11 at 3 (block formatting, initial capitals, and underscoring omitted); see also Docket Entry 18 at 1-3.) In particular, Plaintiff points out that "[her] counsel submitted [two] 5 day letter[s]" to the ALJ 40 and 25 days in advance of the hearing, advising that counsel "intended to submit records dated from January 1, 2021 through October 7, 2021 from Family Medicine – Piedmont Plaza" and "from October 1, 2021 through October 20, 2021 from Orthopaedics – Medical Plaza Miller" (Docket Entry 11 at 4 (citing Tr. 430, 433)), as well as a follow-up letter to the ALJ eight days before the hearing "repeat[ing counsel's] intent to submit records . . . from Family Medicine – Piedmont Plaza" (id. (citing Tr. 434)).[6] Plaintiff further claims that, on the date of the hearing, her "counsel requested that the record be left open for 30 days to allow for the submission of these records [('New Evidence')]" (id. (citing Tr. 436)), but that "[t]he ALJ's decision acknowledge[d neither Plaintiff]'s request that the record be left open" (id. at 5 (citing Tr. 147)), nor the fact "that medical records from January

_____

[6] The regulations require claimants "to inform [the ALJ] about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. §§ 404.935(a), 416.1435(a).

2021 through the date of the administrative hearing were missing from the record" (id. (citing Tr. 147)). Plaintiff maintains that the ALJ's failure to "'ensure that [Plaintiff] and [her counsel] ha[d] indicated, at any time during the hearing, that there [wa]s no additional evidence to submit or disclose to the ALJ" violated Section I-2-6-78 of the Hearings, Appeals, and Litigation Law Manual ("HALLEX"). (Id. (quoting HALLEX, § I-2-6-78 ("Closing the Hearing") (SSA Nov. 20, 2018)).) Those contentions ultimately lack merit.

As an initial matter, Plaintiff's argument glosses over the fact that, at the hearing, her counsel did not object to the ALJ's admission of the medical records exhibited at that time (see Tr. 194), which did not include the New Evidence (see Tr. 442-913), nor did counsel make any request of the ALJ during the hearing to hold the record open for the submission of the New Evidence (see Tr. 191-213). Further, although Plaintiff asserts that, "[o]n November 16, 2021, the date of the administrative hearing, [] counsel requested that the record be left open for 30 days to allow for the submission of the[ New Evidence]" (Docket Entry 11 at 4 (citing Tr. 436)), Plaintiff sent that request, which consists of a letter addressed to the ALJ and transmitted via the SSA's Electronic Records Express ("ERE") system and facsimile, after the hearing had concluded (see Tr. 436 (stating that "[Plaintiff] attended a hearing on November 16, 2021"); see also Tr. 213 (documenting close

of hearing at 10:58 a.m. on November 16, 2021), 436 (reflecting time stamp of letter's transmission as "16:46" or 4:46 p.m. on November 16, 2021)).[7]

Nevertheless, the ALJ here clearly erred. The record contains the written request of Plaintiff's counsel to hold the record open for 30 days to submit the New Evidence (Tr. 436), and the ALJ's decision fails to rule on (or even acknowledge) that request (see Tr. 144-55). The inquiry thus narrows to whether the ALJ's error qualifies as harmless under the circumstances of this case. See Camp v. Massanari, 22 F. App'x 311, 311 (4th Cir. 2001) (holding that, in absence of "showing of prejudice . . ., any error on the part of the ALJ was harmless" (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)).[8]

---

[7] Given that Plaintiff's counsel's letterhead reflects an address in San Antonio, Texas (see Tr. 436), and that San Antonio lies within the Central time zone, the possibility exists that counsel did not send the letter until 5:46 p.m., Eastern Standard Time (the time zone of Greensboro, North Carolina), where counsel sent the letter to the ALJ (see id.).

[8] The ALJ also violated Section I-2-6-78 of HALLEX, by failing to ensure, before closing the hearing, that no additional evidence remained outstanding (see Tr. 191-213). See HALLEX, § I-2-6-78; see also HALLEX, § I-2-6-52E ("Opening Statement") (SSA Nov. 20, 2018) ("[A]n ALJ will ask the claimant and any representative, during the opening statement or prior to closing the hearing[,] if they are aware of any additional evidence that relates to whether the claimant is . . . disabled."). However, even assuming, arguendo, that a violation of HALLEX gives rise to judicially enforceable rights, see Landrum v. Berryhill, No. 1:17CV940, 2019 WL 718550, at *7 (M.D.N.C. Feb. 20, 2019) (unpublished) (Peake, M.J.) ("Although the Fourth Circuit has not addressed the issue, the persuasive authority among the District Courts holds that HALLEX lacks force of law." (internal quotation marks omitted)), recommendation adopted, 2019 WL 1532219 (M.D.N.C. Mar. 18, 2019) (unpublished) (Osteen, Jr., J.), the ALJ's HALLEX error remains harmless for the same reasons, discussed above, that the ALJ's error in failing to rule on Plaintiff's request to hold the record open qualifies as harmless.

The Commissioner argues that any error by the ALJ in failing to rule on Plaintiff's request to hold the record open qualifies as harmless. (See Docket Entry 16 at 9-10.) In the Commissioner's view, "Plaintiff was not prejudiced by the [ALJ's error], because [Plaintiff] has not shown that important new evidence could have been submitted if the record had been held open for 30 more days." (Id. at 10.) In that regard, the Commissioner notes that "Plaintiff did eventually submit [the New Evidence} to the Appeals Council in June 2022, about seven months after the hearing" (id. at 9 (referencing Tr. 8-138, 160-90)), and that "[t]he Appeals Council considered the [New E]vidence, . . . but found that [it] did not show a reasonable probability that it would change the outcome of the decision" (id. at 9-10 (citing Tr. 2)).

In reply, Plaintiff makes the following contentions:

> [The Commissioner] essentially asks this Court to review the [New E]vidence ultimately submitted to the Appeals Council and to determine that the ALJ's decision would have been the same regardless of this evidence, such that there was no prejudice in this case. This weighing of the evidence goes beyond the responsibility of a reviewing court. The question before this Court is whether there has been legal error; the answer to that question is undoubtedly yes. For that reason alone, remand for further proceedings is required.

(Docket Entry 18 at 2 (internal citation omitted).)

As a threshold matter, Plaintiff cites no authority for the proposition that the "weighing of [Plaintiff's New Evidence] goes beyond the responsibility of a reviewing court" (Docket Entry 18 at 2). In fact, whether the Court can consider the substance of the

12

New Evidence in evaluating the harmlessness of the ALJ's error turns on whether the Appeals Council <u>considered</u> and <u>incorporated</u> that evidence into the administrative record. If the Appeals Council considered and incorporated the New Evidence into the record, the Court <u>can</u> consider the New Evidence as part of its substantial evidence review under sentence <u>four</u> of Section 405(g). <u>See</u> <u>Meyer v. Astrue</u>, 662 F.3d 700, 704 (4th Cir. 2011) (noting that court would apply sentence <u>four</u> standard and "review the record as a whole including any new evidence that the Appeals Council specifically <u>incorporated</u> . . . into the administrative record" (emphasis added) (internal quotation marks omitted)); <u>Wilkins v. Secretary, Dep't of Health & Human Servs.</u>, 953 F.2d 93, 96 (4th Cir. 1991) ("The Appeals Council specifically <u>incorporated</u> [the treating psychiatrist]'s letter . . . into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner]'s findings." (emphasis added)).

In contrast, if the Appeals Council declined to consider and to incorporate the New Evidence into the record, the Court may not evaluate the New Evidence as part of its substantial evidence review of the record as a whole, but may only remand the case under sentence <u>six</u> of Section 405(g), if Plaintiff can demonstrate that the New Evidence qualifies as new and material and that good cause exists for the failure to present that evidence to the ALJ. <u>See</u>

13

Shalala v. Schaefer, 509 U.S. 292, 297 n.2 (1993) ("Sentence-six remands may be ordered . . . where new, material evidence is adduced that was for good cause not presented before the agency." (citations omitted)); Farrell v. Astrue, 692 F.3d 767, 770 (7th Cir. 2012) ("Evidence that has been rejected by the Appeals Council cannot be considered [under sentence four] to reevaluate the ALJ's factual findings."). As described more fully below, the circumstances surrounding the Appeals Council's handling of Plaintiff's New Evidence favors a finding that the Appeals Council considered and incorporated that evidence into the record and thus that the Court may evaluate that evidence as part of its harmlessness analysis under the sentence four framework.

Plaintiff's counsel requested review with the Appeals Council on January 5, 2022 (Tr. 356-58, 438-41), and submitted an argument that the ALJ violated Section I-2-7-20 of HALLEX by failing to "notify [Plaintiff's counsel] of any deadline post-hearing [to submit the New Evidence] or make a ruling on [Plaintiff's] written request to hold the record open" (Tr. 440 (citing HALLEX, § I-2-7-20 ("Setting a Time Limit for Posthearing Evidence") (SSA May 1, 2017))). In May and June 2022, Plaintiff submitted the New Evidence to the Appeals Council. (See Tr. 8-138, 160-90.) Shortly thereafter, the Appeals Council denied Plaintiff's request for review, remarking as follows:

> [Plaintiff] submitted medical records from Musculoskeletal Medical Plaza Miller, dated October 25,

14

2021 to November 19, 2021 (32 pages) and from Family
Medicine-Piedmont Plaza, dated August 5, 2021 to January
14, 2022 (132 pages). [The Appeals Council] find[s] that
this evidence does not show a reasonable probability that
it would change the outcome of the [ALJ]'s
decision. [The Appeals Council] did not exhibit this
evidence.

(Tr. 2 (emphasis added).) Consistent with the language emphasized
above, the Appeals Council noted that it "ha[d] received additional
evidence which it [wa]s making part of the record," that
"consist[ed] of . . . [the r]equest for [r]eview from [Plaintiff's
counsel] received January 5, 2022 (3 pages)," a "[b]rief from
[Plaintiff's counsel], received January 5, 2022 (3 pages)," and a
"[b]rief from [Plaintiff's counsel], received January 31, 2022 (2
pages)," which the Appeals Council exhibited as "Exhibit 18B,"
"Exhibit 16E," and "Exhibit 17E," respectively (Tr. 6 (emphasis
added); see also Tr. 356-58 (Ex. 18B - request for review), 437-39
(Ex. 16E - brief), 440-41 (Ex. 17E - brief)). Although the Appeals
Council did not include the New Evidence in the list of items the
Appeals Council "ma[de] part of the record" (Tr. 6), the New
Evidence appears in the administrative transcript before this Court
following the Appeals Council's decision denying review and bears
transcript page numbers 8 through 138 and 160 through 190 (see Tr.
8-138, 160-90), consistent with administrative guidance, see
HALLEX, § I-3-5-20 ("Evaluation of Additional Evidence") (SSA Dec.
16, 2020) (providing that Appeals Council "will evaluate all
additional evidence it receives, but will only mark as an exhibit

and make a part of the official record additional evidence it determines meets the requirements of 20 [C.F.R. §] 404.970(a)(5)-(b)," but that such evidence "will be included in the certified administrative record if the case is appealed to Federal court" (emphasis added)).

That chain of events presents the Court with two possible interpretations of the state of the record. On one hand, the Court could find that the Appeals Council 1) considered the New Evidence by examining it and then finding that it "d[id] not show a reasonable probability that it would change the outcome of the [ALJ's] decision" (Tr. 2), and 2) incorporated the New Evidence into the record by including it in the administrative transcript before this Court following the decision denying review (see Tr. 8-138, 160-90), such that Section 405(g)'s sentence four should apply. On the other hand, the Court could view the Appeals Council's refusal to "mak[e the New Evidence] part of the record" (Tr. 6) as an indication that the Appeals Council neither considered nor incorporated the New Evidence into the record, thereby making sentence six of Section 405(g) the appropriate framework for decision. See Patricia C. v. Berryhill, No. 4:17CV58, 2019 WL 254981, at *2 & n.3 (W.D. Va. Jan. 2, 2019) (unpublished) (observing that, where Appeals Council found new evidence "did not show a reasonable probability that it would change the outcome of the [ALJ's] decision" and "did not consider

and exhibit th[e new] evidence," but copy of that evidence appeared in administrative transcript before the court, "[t]he Commissioner's practice of mixing into the certified copy of the record evidence that her agency has expressly refused to 'consider and exhibit[]' present[ed] an awkward procedural posture for judicial review" and, because the court "might [in the future] have to choose which part of § 405(g)'s text — sentence four or sentence six — governs th[e c]ourt's authority to review the Commissioner's final decision[,] . . . the [c]ourt welcome[d] the parties' input on how best to proceed under § 405(g) when the Commissioner files a certified transcript of the record of the underlying administrative proceedings that contains evidence the Appeals Council has explicitly declined to accept, consider, and/or incorporate into that record" (internal citations omitted)), recommendation adopted sub nom. Coleman v. Berryhill, 2019 WL 254672 (W.D. Va. Jan. 17, 2019) (unpublished).

Further complicating matters, the Fourth Circuit has evaluated cases pursuant to both sentence four and sentence six when confronted with new evidence first presented to the Appeals Council. Compare Wiebusch v. Commissioner, Soc. Sec. Admin., No. 20-1590, 2022 WL 2965653, at *2-3 (4th Cir. July 27, 2022) (unpublished) (reviewing case under sentence four standard where Appeals Council found new evidence consisting of treating physician questionnaire did not show reasonable probability it would change

17

outcome of ALJ's decision but <u>not</u> addressing sentence six or whether Appeals Council had considered or incorporated new evidence), <u>with</u> <u>Jackson v. Astrue</u>, 467 F. App'x 214, 218 (4th Cir. 2012) (holding that, where Appeals Council rejected new evidence because it "d[id] not provide a basis for changing the [ALJ]'s decision[,] . . . [the court's] proper disposition is to remand pursuant to sentence <u>six</u> of § 405(g) which authorizes a remand upon a showing of new material evidence" (emphasis added)).

District courts within the Fourth Circuit similarly take different approaches to cases involving new evidence presented to (but not exhibited by) the Appeals Council. <u>See, e.g.</u>, <u>Montoya v. Kijakazi</u>, No. 1:20CV1157, 2022 WL 562945, at *7 (M.D.N.C. Jan. 11, 2022) (unpublished) (Webster, M.J.) (deciding case under sentence <u>four</u> framework because "[the p]laintiff appear[ed] to be seeking a sentence <u>four</u> remand," where Appeals Council failed to acknowledge new evidence submitted by the plaintiff and thus that evidence <u>did not appear in administrative transcript</u>, but also noting that "analysis and result [] would essentially be the same even if [the p]laintiff sought a remand pursuant to sentence <u>six</u>" (emphasis added)), <u>recommendation adopted</u>, 2022 WL 561533 (M.D.N.C. Feb. 24, 2022) (unpublished) (Biggs, J.); <u>Sales v. Saul</u>, No. 1:19CV476, 2020 WL 4735308, at *4 (M.D.N.C. Aug. 14, 2020) (unpublished) (Webster, M.J.) (where "[the p]laintiff submitted additional information to the Appeals Council . . .[, and t]he Appeals Council determined

18

that such evidence d[id] not show a reasonable probability that it would change the outcome of the [ALJ's] decision," but included the new evidence in the Court's administrative transcript, "the Court conclude[d] that the proper course [ wa]s to remand this matter [under sentence _four_ of 42 U.S.C. § 405(g)] for further administrative proceedings." (internal quotation marks and citations omitted)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 1, 2020) (Eagles, J.); <u>Donald C. v. Saul</u>, No. 5:18CV63, 2019 WL 9056721, at *11 (W.D. Va. Aug. 19, 2019) (unpublished) (finding that, because Appeals Council concluded that newly submitted evidence did not raise reasonable probability of changing outcome of case and "<u>did not consider and exhibit</u> th[at] evidence," the plaintiff's contention regarding the new evidence constitutes "an argument that the case should be remanded under sentence <u>six</u> of 42 U.S.C. § 405(g) to enable the Commissioner to consider additional evidence in the first instance" (emphasis added)); <u>Lauder v. Saul</u>, No. 1:18CV480, 2019 WL 3457706, at *9-10 (M.D.N.C. July 31, 2019) (unpublished) (Peake, M.J.) (denying remand under sentence _four_ because "no meaningful possibility [existed] - much less a reasonable probability - that the additional evidence would change the outcome of the decision," even where Appeals Council did not <u>exhibit</u> new evidence because it "d[id] not relate to the period at issue" but new evidence <u>appeared in administrative transcript</u>), <u>recommendation adopted</u>, slip op. (M.D.N.C. Aug. 22, 2019) (Eagles,

19

J.); <u>Johnson v. Acting Comm'r of Soc. Sec. Admin.</u>, No. 9:18CV90, 2019 WL 2717860, at *6 n.4 (D.S.C. June 27, 2019) (unpublished) ("The Appeals Council ultimately decided that . . . it would <u>not</u> <u>'consider' or 'exhibit'</u> the evidence because there was not a reasonable probability it would change the outcome of the case . . . . The Appeals Council therefore denied review and would not consider this new evidence *after* making a determination that the medical records provided no basis to change the ALJ's decision. Further, the medical records are included in the transcript and noted as 'Medical Evidence of Record.' Accordingly, this remand is appropriate under sentence <u>four</u> of 42 U.S.C. § 405(g)." (underscoring added) (italics in original)); <u>Coleman v. Berryhill</u>, No. 6:17CV2613, 2019 WL 850902, at *5 (D.S.C. Feb. 22, 2019) (unpublished) (noting that Appeals Council did not incorporate new evidence into the record, but finding sentence <u>four</u> remand appropriate "because it was an error of law [for the Appeals Council] to not consider and exhibit such evidence"); <u>Hawks v.</u> <u>Berryhill</u>, No. 1:17CV1021, 2018 WL 6728037, at *5 n.6, *8 n.9 (M.D.N.C. Dec. 21, 2018) (unpublished) (noting that the plaintiff did not request sentence <u>six</u> remand and could "not argue [for a sentence <u>four</u> remand based on the fact] that the [new evidence], when considered as part of the administrative record as a whole, render[ed] the ALJ's decision unsupported by substantial evidence[,] . . . because . . . the Appeals Council <u>declined to</u>

incorporate the [new evidence] into the administrative record"
(emphasis added)), recommendation adopted, 2019 WL 359999 (M.D.N.C.
Jan. 29, 2019) (unpublished) (Schroeder, C.J.); Jones v. Berryhill,
No. 1:17CV703, 2018 WL 3849914, at *6-7 (M.D.N.C. Aug. 13, 2018)
(unpublished) (denying remand under sentence six where Appeals
Council found new evidence "d[id] not show a reasonable probability
that it would change the outcome of the decision" and "did not
consider and exhibit th[e new] evidence," and administrative
transcript before the Court did not contain new evidence),
recommendation adopted, slip op. (M.D.N.C. Sept. 4, 2018)
(Schroeder, C.J.); Brown v. Colvin, No. 7:14CV283, 2015 WL 7307320,
at *6 (E.D.N.C. Oct. 27, 2015) (unpublished) ("To the extent that
the lack of formal incorporation of the additional evidence into
the record signifies that it remains outside the record,
notwithstanding its inclusion in the transcript of proceedings,
this evidence is appropriately treated as having been submitted for
the first time to th[e] court and therefore as being subject to
sentence six of 42 U.S.C. § 405(g)," but also finding that
"[r]emand [wa]s [] warranted [under sentence four] if the [new
evidence was] deemed to have become part of the record by virtue of
the Appeals Council's consideration of [it], even if not formally
incorporated into the record" (emphasis added)), recommendation
adopted, 2015 WL 7306453 (E.D.N.C. Nov. 19, 2015) (unpublished).

21

On balance, four facts before the Court in this case favor analyzing this assertion of error under the sentence _four_ framework. First, unlike in _Hawks_ and _Jones_, the New Evidence appears in the administrative transcript before the Court, albeit in the "Court Transcript Index" portion rather than the "Exhibits" portion of the record (_see_ Tr. 8-138, 160-90). The inclusion of the New Evidence in the Court's official record of proceedings lends support to the notion that the Court can consider it as part of a sentence _four_ analysis. _See_ _Harvey v. Berryhill_, No. CV 0:18-48, 2019 WL 2062446, at *3-5 (D.S.C. Feb. 25, 2019) (unpublished) (remanding case under sentence _four_ where Appeals Council found new evidence "d[id] not relate to the period at issue" but included new evidence in administrative transcript), _recommendation adopted sub nom._ _Harvey v. Commissioner of Soc. Sec._ _Admin._, 2019 WL 1219153 (D.S.C. Mar. 15, 2019) (unpublished); _West_ _v. Berryhill_, No. 18CV92, 2019 WL 362259, at *6 (D. Haw. Jan. 29, 2019) (unpublished) ("The [c]ourt notes that the Appeals Council also stated that [the new evidence] would not be exhibited. [The new evidence], however, can be found in the [administrative transcript] of this case. Unlike other medical evidence, though, [the new evidence is] not exhibited in the sense that [it] ha[s] been assigned an exhibit number, but, instead, placed in that part of the [administrative transcript] concerning 'Documents Related to Administrative Process Including Transcript of Oral Hearing, if

22

applicable.' Nonetheless, as far as this [c]ourt is concerned, [the new evidence is] part of the certified transcript of record in this case. As a result, the [c]ourt may remand this case to the ALJ pursuant to Sentence <u>Four</u> . . . ." (emphasis added) (internal citations omitted)).[9]

Second, unlike in <u>Donald C.</u>, <u>Patricia C.</u>, and <u>Jones</u>, the Appeals Council here did <u>not</u> explicitly state that it "did not <u>consider</u>" Plaintiff's New Evidence. (<u>See</u> Tr. 2, 5-6.) The omission of the "did not consider" language from the Appeals Council's decision suggests that it did consider the New Evidence in making its determination that the New Evidence "d[id] not show a reasonable probability that it would change the outcome of the [ALJ's] decision" (Tr. 2). <u>See</u> <u>Vahey v. Saul</u>, No. 18CV350, 2019 WL 3763436, at *9 (D. Haw. Aug. 9, 2019) (unpublished) (observing that, in other cases, "the Appeals Council had stated that it did not 'consider and exhibit' the evidence; whereas, [in the case before the court], the Appeals Council said only that it did not 'exhibit' the evidence").

---

[9] Indeed, some district courts hold that merely submitting evidence to the Appeals Council, regardless of whether the Appeals Council "considers" or "exhibits" that evidence, makes that evidence part of the official record and outside the purview of a sentence six remand. <u>See</u> <u>Burgos v. Kijakazi</u>, No. 8:20CV2497, 2022 WL 843594, at *4 (M.D. Fla. Mar. 22, 2022) (unpublished) ("As [the p]laintiff submitted the [new evidence] <u>during the administrative proceedings</u>, and the Appeals Council explicitly <u>addressed</u> those records and found that they did not . . . relate[] to the period at issue, no basis for remand under sentence <u>six</u> exists as to the [new evidence]." (emphasis added)); <u>Barbara H. v. Saul</u>, No. 19 CV 50011, 2020 WL 3469163, at *5 (N.D. Ill. June 25, 2020) (holding that merely "present[ing]" new evidence to Appeals Council, regardless of grounds given by Appeals Council for denying review, precludes district court from ordering sentence <u>six</u> remand).

23

Third, the Appeals Council must have <u>considered</u> the new evidence <u>to some degree</u> in order to make its determination that the new evidence did not raise a reasonable probability of a different outcome (<u>see</u> Tr. 2). See <u>Vahey</u>, 2019 WL 3763436, at *8 ("Presumably, to decide that the [new evidence] would not change the outcome of the decision, the Appeals Council would have needed to 'consider' those records."); <u>Reyes v. Commissioner of Soc. Sec. Admin.</u>, No. 17CV8192, 2019 WL 2098755, at *3 (D. Ariz. May 14, 2019) (unpublished) ("The [c]ourt is unable to reconcile [the Appeals Council's] statement [that it did not consider the new evidence] with the previous sentence in the order finding that the evidence d[id] not show a reasonable probability of changing the ALJ's decision. . . . [T]he Appeals Council made a finding about the merits of the additional evidence and considered whether it would change the outcome of the decision. Therefore, it is part of the record." (internal citations omitted)); <u>Linnehan v. Berryhill</u>, No. 17CV4146, 2018 WL 6267846, at *8 (N.D. Cal. July 31, 2018) (unpublished) ("The Appeals Council cannot consider the evidence to conclude that it 'does not show a reasonable probability that it would change the outcome of the decision' and then exclude the evidence from the record based on the illogical conclusion that '[w]e did not consider and exhibit this evidence.'").

Fourth, the applicable regulation requires the Appeals Council to <u>consider</u> new evidence <u>only</u> if the claimant shows "good cause"

for failing to submit the evidence at least five days prior to the hearing before the ALJ,[10] and the Appeals Council here did <u>not</u> expressly find that Plaintiff lacked good cause to submit the New Evidence (<u>see</u> Tr. 2). If the Appeals Council implicitly found that Plaintiff showed good cause for failing to submit the New Evidence to the ALJ, then Section 404.970 <u>required</u> the Appeals Council to <u>consider</u> that evidence. <u>See</u> <u>Vahey</u>, 2019 WL 3763436, at *6 (noting that, "under the new [version of Section 404.970], the Appeals Council could only 'consider' evidence upon a showing of good cause" and, given that Appeals Council's "denial letter [wa]s devoid of any good cause discussion," the possibility existed that "the Appeals Council implicitly found good cause [and ] considered the [new] evidence," thus making the evidence "part of the record"). Under these factual circumstances, the Court may analyze

---

[10]  The applicable regulation provides, in pertinent part, as follows:

    (a) The Appeals Council will review a case if—

    . . .

        (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is <u>new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision</u>.

    (b) The Appeals Council will <u>only consider</u> additional evidence under paragraph (a)(5) of this section if [the claimant] show[s] <u>good cause for not informing [the Appeals Council] about or submitting the evidence as described in § 404.935</u> [which requires claimants to submit evidence at least five days prior to the ALJ hearing].

20 C.F.R. § 404.970 (2017) (emphasis added).

Plaintiff's new evidence as part of its harmlessness inquiry under the framework of sentence <u>four</u> of Section 405(g).

"[B]ecause [the Appeals Council] denied review, the decision of the ALJ became 'the final decision of the [Commissioner].'" <u>Meyer</u>, 662 F.3d at 704 (quoting <u>Wilkins</u>, 953 F.2d at 96). A court should "uphold the factual findings underpinning the Commissioner's final decision 'if they are supported by substantial evidence and were reached through application of the correct legal standard.'" <u>Id.</u> (quoting <u>Craig</u>, 76 F.3d at 589). "In making th[at] determination, [the Court] 'review[s] the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" <u>Id.</u> (quoting <u>Wilkins</u>, 953 F.2d at 96). Significantly, the Court "review[s] for substantial evidence the <u>ALJ's decision</u>, not the <u>Appeals Council's denial</u> of [the plaintiff]'s request that the Council review the ALJ's decision due to the newly submitted [evidence]." <u>Wiebusch</u>, 2022 WL 2965653, at *2 n.3. For the reasons explained in more detail below, the Court should find that Plaintiff's New Evidence would not have changed the outcome of the ALJ's unfavorable decision and, thus, that the ALJ's error in failing to rule on Plaintiff's request to hold the record open for the submission of the New Evidence (and any related error under HALLEX) remains harmless. <u>See generally</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or

26

common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Plaintiff's New Evidence consists of the following medical evidence:

- a visit with Dr. Ana-Maria Nae Benefield on August 5, 2021 to "establish care," reflecting complaints of leg swelling and "occasional" lower extremity joint pains (Tr. 10), at which Dr. Benefield noted non-pitting edema in both of Plaintiff's lower extremities (see Tr. 12), diagnosed "likely dependent/venous stasis" (Tr. 13), and prescribed hydrochlorothiazide ("HCTZ"), as well as recommended that Plaintiff decrease her salt and alcohol intake, elevate her legs, and use compression stockings (see id.);

- a follow-up visit with Dr. Benefield on September 8, 2021, at which Plaintiff described her leg swelling as "improved" on HCTZ, but reported a rash on her right shin as well as left knee pain and a cracking sound when climbing (see Tr. 42), whereupon Dr. Benefield noted crepitus in Plaintiff's left knee, but no edema, significant effusion, or tenderness (see Tr. 44), prescribed a steroid cream for the rash, and ordered a left knee x-ray (see Tr. 45);

- a left knee x-ray dated September 8, 2021, which showed a small joint effusion, mild tricompartmental degenerative changes, and lateral patellar tilt (see Tr. 66);

- a follow-up visit with Dr. Benefield on October 13, 2021, where Plaintiff indicated that both her leg swelling and her rash had improved, but complained of lower back pain and acute right shoulder issues after engaging in some lifting and helping her neighbor paint, and asked Dr. Benefield to complete disability paperwork (see Tr. 78), whereupon Dr. Benefield advised that she did not perform disability evaluations and that Plaintiff's left knee x-ray did not show significant osteoarthritis

27

(see id.), documented limited abduction, a positive empty can test, and pain with biceps flexion in Plaintiff's right upper extremity, diagnosed right rotator cuff disorder, prescribed Flexeril, and referred Plaintiff to an orthopedist and a physical therapist (see Tr. 81);

- a visit on October 19, 2021, with orthopedists Dr. Ana Mariel Garcia and Dr. Daryl Alan Rosenbaum, at which Plaintiff reported pain in her lower back, left knee, and right shoulder (see Tr. 102), and Dr. Garcia noted patellar tilt and tenderness, a positive pivot shift test, mild swelling, decreased right shoulder range of motion and strength secondary to pain, and positive Hawkins, cross arm, and impingement tests (see Tr. 105), diagnosed localized osteoarthritis, patellar maltracking, and patellofemoral arthralgia of the left knee, as well as degenerative joint disease and rotator cuff tendinopathy of the right shoulder, and prescribed Voltaren, home exercises, over-the-counter analgesics, a knee brace, and physical therapy (see Tr. 106); and

- an initial evaluation by a physical therapist on October 25, 2021, at which Plaintiff complained of right shoulder pain (see Tr. 162), and the therapist recorded decreased right shoulder range of motion and strength (see Tr. 163-64), positive Hawkins, Kennedy, and Neers tests (see Tr. 164), and tenderness in the lateral acromion and supraspinatus insertion (see id.), as well as diagnosed rotator cuff tendinopathy with range of motion limited primarily by pain and relatively good strength, and recommended therapy once per week for 12 weeks (see Tr. 166).

As the ALJ already found Plaintiff's knee and lower back problems to constitute severe impairments at step two of the SEP (see Tr. 150 (finding Plaintiff's "major dysfunction of the joints" and "spine disorder" severe)), and provided limitations in the RFC to account for those impairments (see id. (limiting Plaintiff to 25 pounds of lifting/carrying and frequent climbing, balancing,

28

kneeling, crouching, and crawling)), Plaintiff's complaints of right shoulder pain constitute the only significant new medical issue in the New Evidence.[11]  For the reasons explained below, the portions of the New Evidence addressing Plaintiff's right shoulder impairment would not show a reasonable probability of a different outcome in her claims, because that evidence fails to even show that Plaintiff's right shoulder impairment would meet the duration requirement to qualify as a severe impairment.

"At step 2 of the [SEP], [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that <u>has lasted or can be expected to last for a continuous period of at least 12 months or end in death</u>."  Social Security Ruling 16-3p, <u>Titles II & XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *11 (Oct. 25, 2017) ("SSR 16-3p") (emphasis added); <u>see also</u> 20 C.F.R. §§ 404.1509, 416.909, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

---

[11] Plaintiff argues in her second assignment of error that the New Evidence "showed deterioration of her left knee impairment, with limited range of motion" (Docket Entry 11 at 7 (citing Tr. 66, 81, 102, 105-06)), but the cited records show, at most, minor worsening of Plaintiff's left knee condition (<u>compare</u> Tr. 450 (12/2/19 x-ray of left knee showing "<u>minimal</u> medial narrowing" (emphasis added)), <u>with</u> Tr. 66 (9/8/21 left knee x-ray recording "<u>mild</u> tricompartmental degenerative changes" (emphasis added)); <u>see also</u> Tr. 81 (documenting decreased <u>right shoulder</u> range of motion but not reflecting <u>any</u> findings related to Plaintiff's left knee), 102 (reflecting Plaintiff's <u>subjective</u> complaints of left knee symptoms), 105-06 (containing orthopedist's notation of 10-degree loss of left knee extension but <u>full</u> flexion)).  Plaintiff made no attempt to explain why the RFC's limitations to 25 pounds of lifting/carrying and frequent climbing, balancing, kneeling, crouching, and crawling (<u>see</u> Tr. 150) would not sufficiently accommodate her mild left knee osteoarthritis. (<u>See</u> Docket Entries 11, 18.)

29

Plaintiff bears the burden of proving severity at step two. Hunter, 993 F.2d at 35; see also Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007) ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." (internal citation omitted)).  "When . . . a hearing decision is being issued[ ] before the impairment has lasted 12 months, the nature of the impairment, the therapeutic history, and the prescribed treatment will serve as the basis for determining whether the impairment . . . will continue . . . for the additional number of months needed to make up the required 12 months duration. . . ."  Social Security Ruling 82-52, Titles II and XVI: Duration of the Impairment, 1982 WL 31376, at *2 (1982) ("SSR 82-52").

Here, the New Evidence relating to Plaintiff's right shoulder impairment demonstrates neither that such impairment in fact lasted for a continuous period of at least 12 months, nor that it could have been expected to last for such a period.  As the bulleted summary above of Plaintiff's New Evidence shows, Plaintiff did not seek treatment for right shoulder pain until October 13, 2021 (see Tr. 78),[12] just over one month before the hearing (see Tr. 191), and about six weeks from the date of the ALJ's decision and the end of the relevant period in this case (see Tr. 144, 155).  Over the next 12 days, Plaintiff twice saw an orthopedist (see Tr. 102-06) (who

[12] Additionally, the record reflects that Plaintiff attributed the right shoulder symptoms to activity shortly before that visit.  (See Tr. 78.)

30

referred Plaintiff to physical therapy (see Tr. 106)), and a physical therapist (see Tr. 162-75). Despite the record's confirmation that Plaintiff obtained medical insurance effective on January 1, 2021 (see Tr. 175), and that such insurance authorized 30 physical therapy visits per calendar year (see id.), no evidence exists of any further physical therapy visits or other treatment for Plaintiff's right shoulder from October 25, 2021, the date of Plaintiff's sole physical therapy visit (see Tr. 162), through June 30, 2022, the date Plaintiff submitted the last set of New Evidence to the Appeals Council (see Tr. 8). Accordingly, considering the 12-day "therapeutic history" of Plaintiff's right shoulder impairment, SSR 82-52, 1982 WL 31376, at *2, Plaintiff's New Evidence falls considerably short of satisfying the regulations' duration requirement, let alone demonstrating that such impairment would cause outcome-determinative changes to the RFC, see Munnings-Bah v. Saul, No. 19CV3510, 2020 WL 5755065, at *15 (S.D.N.Y. Sept. 14, 2020) (unpublished) (affirming "ALJ['s] conclu[sion] that [the plaintiff]'s right shoulder pain did not meet step two's duration requirement,' where "the[] treatment records . . . span[ned] only about five months"), recommendation adopted sub nom. Bah v. Commissioner of Soc. Sec., 2020 WL 5880182 (S.D.N.Y. Oct. 2, 2020) (unpublished); Tomlinson v. Berryhill, No. 4:17CV14, 2017 WL 7049173, at *4 (E.D.N.C. Dec. 12, 2017) (unpublished) (rejecting the plaintiff's argument that "ALJ was

merely speculating that the [plaintiff's shoulder] impairment was not expected to last for 12 months," because "ALJ appropriately considered the relevant factors — the nature of the impairment, the therapeutic history, and the prescribed treatment — in determining that [the plaintiff]'s impairment was not expected to last 12 months" (citing SSR 82-52, 1982 WL 31376, at *2)), recommendation adopted, 2018 WL 539801 (E.D.N.C. Jan. 24, 2018) (unpublished); Thomas v. Astrue, No. CIV.A. 11-2960, 2012 WL 5363448, at *12 (D. Md. Oct. 26, 2012) (unpublished) (upholding ALJ's finding that impairment "did not satisfy the duration requirement, because [the plaintiff] had only begun treatment in October of 2008," about seven months before ALJ's decision); Martin v. Astrue, No. 4:07CV24, 2008 WL 2581582, at *2 (W.D. Va. June 26, 2008) (unpublished) (deeming ALJ's "determination that [the] plaintiff's [impairment] did not last and was not expected to last for a continuous period of no less than twelve months [] supported by substantial evidence," where "th[e] time span [of her treatment] cover[ed] only about eight months"), recommendation adopted, 2008 WL 3290646 (W.D. Va. Aug. 8, 2008) (unpublished).

In light of the foregoing analysis, the Court should deny relief on Plaintiff's first assignment of error.

## 2. Duty to Develop the Record

In Plaintiff's second issue on review, she contends that "the ALJ failed to assist [Plaintiff] in developing the medical evidence

32

of record." (Docket Entry 11 at 6 (block formatting, initial capitals, and underscoring omitted); <u>see also</u> Docket Entry 18 at 3-5.) Specifically, Plaintiff asserts that "[t]he medical evidence before the ALJ contained absolutely no treating medical evidence after December 2018" (Docket Entry 11 at 6 (citing Tr. 455-913)), and "absolutely no medical evidence from December 2019 through the date of the ALJ's decision, November 2021" (<u>id.</u> (citing Tr. 155)). Plaintiff further argues that "[t]he ALJ knew other evidence existed," because "[Plaintiff] had informed the ALJ through counsel that there were additional medical records from treating physicians related to the relevant time period" (<u>id.</u> at 7 (citing Tr. 433-34, 436)), but that "the ALJ did nothing to obtain this evidence[ and] . . . closed the record despite [Plaintiff]'s explicit request for additional time to obtain this evidence" (<u>id.</u> (citing Tr. 436, 440-41)). Plaintiff additionally faults the ALJ for 1) finding the opinions of consultative medical examiner Dr. Stephen Burgess "'vague, and not expressed in vocationally quantifiable terms'" (<u>id.</u> at 8 (quoting Tr. 153)), but neither "s[eeking] clarification from Dr. Burgess" (<u>id.</u> (citing Social Security Ruling 85-16, <u>Titles II and XVI: Residual Functional Capacity for Mental Impairments</u>, 1985 WL 56855, at *3 (1985))), nor "s[eeking] an updated consultative examination, with specific functional limitations" (<u>id.</u> (citing 20 C.F.R. §§ 404.1519a(a), 416.919a(a))); and 2) "f[inding] the opinions of the state agency physicians persuasive"

33

(id. at 9 (citing Tr. 153)), when "[b]oth state agency physicians acknowledged that significant medical evidence had been requested but not yet received" (id. (citing Tr. 239)), as well as "that a consultative examination was necessary, because '[t]he evidence as a whole, both medical and non-medical [wa]s not sufficient to support a decision on the claim'" (id. (quoting Tr. 216-17, 239)). Plaintiff's arguments miss the mark.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173-74 (4th Cir. 1986) (citations omitted). The ALJ discharges his duty to develop the record where "the record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000); accord Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009). Accordingly, in order to demonstrate that the ALJ failed to develop the record, a claimant must show that "evidentiary gaps" existed that prejudiced his or her rights, Blankenship v. Astrue, No. 3:11CV5, 2012 WL 259952, at *13 (S.D.W. Va. Jan. 27. 2012) (unpublished) (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)), and that he or she "could and would have adduced evidence that might have altered the result,'" id. (quoting Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000) (emphasis added)). As the

34

following discussion shows, Plaintiff ultimately cannot meet that burden.

The ALJ's failure to rule on Plaintiff's request to hold the record open for 30 days to submit the New Evidence (see Tr. 436) (about which evidence the ALJ had received advance notice in the form of five-day letters from Plaintiff's counsel (see Tr. 430, 433-35)) constitutes a failure to fulfill the ALJ's duty to develop the record. Absent the New Evidence, the record before the ALJ contained only <u>one</u> treatment record during the more than three-year relevant period from Plaintiff's alleged onset date of November 18, 2018 (see Tr. 359, 362), to the ALJ's decision on November 30, 2021 (see Tr. 144, 155) – a hospital stay in December 2018 for nephrolithiasis (kidney stones) and a urinary tract infection (see Tr. 455-635). Indeed, the only other medical evidence of record consisted of the November 2019 consultative report of Dr. Burgess (see Tr. 443-47), x-rays of Plaintiff's lumbar spine and left knee in December 2019 (see Tr. 449-50), and the opinions of the state agency medical consultants in December 2019 (see Tr. 214-33) and February 2020 (see Tr. 236-57).

The ALJ's failure to fulfill her duty to develop the record, however, did not prejudice Plaintiff. As explained in the discussion of Plaintiff's first assignment of error, even had the ALJ admitted the New Evidence into the record prior to issuing a decision, Plaintiff has not shown that the New Evidence would have

changed the outcome of the ALJ's decision.  See generally Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Plaintiff's argument that the ALJ erred by discounting Dr. Burgess's opinion as vague but neither recontacting Dr. Burgess nor ordering a second consultative examination (see Docket Entry 11 at 8 (citing Tr. 153)) fares no better.  In making that argument, Plaintiff relies on language in a Social Security Ruling governing the evaluation of mental impairments which provides that, "when the reports from [consultative] sources appear to be incomplete, the source should be recontacted to clarify the issues," SSR 85-16, 1985 WL 56855, at *3 (emphasis added), as well as regulations providing that the ALJ "may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow the [ALJ] to make a . . . decision on [a] claim," 20 C.F.R. §§ 404.1519a(a), 416.916a(a) (emphasis added). (Docket Entry 11 at 8.)  Plaintiff's reliance on SSR 85-16 and the regulations governing consultative examinations fails for two reasons.

First, the ALJ here did not reject Dr. Burgess's opinion as "incomplete," "inconsistent," or "insufficient"; rather, after describing at length Dr. Burgess's objective findings on

36

examination (see Tr. 152), the ALJ credited Dr. Burgess's objective findings, but found his opinion that Plaintiff had mild to moderate physical impairment overall vague:

> Dr. Burgess assessed low back musculoskeletal pain, bilateral foot pain and bilateral ankle pain. He noted mild to moderate physical impairment overall. His opinion is partly persuasive. Dr. Burgess' findings are well supported by an extensive, in-person exam. His opinion is also generally consistent with evidence which shows intact physical function. [Plaintiff]'s extremity strength was 5/5, she sat comfortably, and she could walk unassisted. However, his opinion was vague, and not expressed in vocationally quantifiable terms.

(Tr. 152-53 (emphasis added).) "Vagueness is a proper ground for limiting the weight given medical source opinions," Robertson v. Saul, No. 5:18CV454, 2019 WL 7585180, at *11 (E.D.N.C. Dec. 19, 2019) (unpublished), recommendation adopted, 2020 WL 241552 (E.D.N.C. Jan. 14, 2020) (unpublished); see also Gallardo v. Berryhill, No. 1:16CV355, 2017 WL 1409575, at *7 (M.D.N.C. Apr. 20, 2017) (unpublished) (deeming vagueness "permissible grounds on which to discount a medical source's opinions"), recommendation adopted, 2017 WL 2623884 (June 16, 2017) (unpublished) (Schroeder, J.).

Second, under the governing regulations, when the ALJ finds "evidence in [a] case record [] insufficient or inconsistent," the ALJ "may need to take [] additional actions," including that the ALJ can "determine whether [a claimant is] disabled based on the evidence [the ALJ] ha[s]," or "may recontact [a claimant's] treating source." 20 C.F.R. §§ 404.1520b, 416.920b (emphasis

37

added).  Here, the ALJ did not find Dr. Burgess's report or
opinions "insufficient" or "inconsistent" (<u>see</u> Tr. 152-53) and,
even if the ALJ had done so, the regulations vested the ALJ with
substantial discretion regarding the steps to take to remedy the
insufficiency or inconsistent and did <u>not</u> compel the ALJ to
recontact Dr. Burgess.  <u>See</u> <u>Hughes v. Kijakazi</u>, No. CV 5:21-905,
2022 WL 3714627, at *11-12 (D.S.C. Aug. 29, 2022) (unpublished)
("The ALJ was not required to recontact [the] consultative
examiner [whose opinions the ALJ had found vague] . . . to obtain
additional information with respect to his opinion."); <u>Cullen v.</u>
<u>Kijakazi</u>, No. 6:20CV4061, 2022 WL 92616, at *2 (D.S.C. Jan. 10,
2022) (unpublished) ("The applicable regulations now allow ALJs
<u>substantial discretion</u> in deciding whether to recontact a treating
physician for additional or clarifying information.  [The
p]laintiff has cited no authority under the applicable
regulation . . . <u>requiring</u> an ALJ to recontact a medical source for
clarification of an opinion." (emphasis added)); <u>Rogers v. Saul</u>,
No. 4:19CV896, 2020 WL 4209064, at *10 (D.S.C. June 30, 2020)
(unpublished) (rejecting the plaintiff's argument that the ALJ
erred by finding consultative examiner's opinions "overly vague,"
but then not recontacting the consultative examiner "for an
explanation," because 20 C.F.R. § 404.1520b contains no such
requirement), <u>recommendation adopted</u>, 2020 WL 4207649 (D.S.C. July
22, 2020) (unpublished).

Plaintiff additionally faults the ALJ for "f[inding] the opinions of the state agency physicians persuasive (Docket Entry 11 at 9 (citing Tr. 153)), when "[b]oth state agency physicians acknowledged that significant medical evidence had been requested but not yet received" (id. (citing Tr. 239)), as well as "that a consultative examination was necessary, because '[t]he evidence as a whole, both medical and non-medical [wa]s not sufficient to support a decision on the claim'" (id. (quoting Tr. 217, 239); see also Docket Entry 18 at 4). In Plaintiff's view, "[t]he ALJ committed reversible error by relying upon these two incomplete opinions rather than developing the medical evidence of record." (Docket Entry 11 at 9 (citing Jelinek v. Astrue, 662 F.3d 805, 812 (7th Cir. 2011), Blakley v. Commissioner of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009), Morales v. Apfel, 225 F.3d 310, 319-20 (3d Cir. 2000),and Smith v. Heckler, 735 F.2d 312, 316 (8th Cir. 1984) (quoting Vasquez v. Schweiker, 701 F.2d 733, 736 (8th Cir. 1983 ("The credibility of a medical opinion is particularly suspect when it is based on incomplete evidence.")))).)

As a threshold matter, Plaintiff misstates the record by arguing that both state agency medical consultants "acknowledged that significant medical evidence had been requested but not yet received." (Id. (citing Tr. 239).) The transcript page Plaintiff cites to support that statement contains a list of "evidence [that] ha[d] been requested," which includes Dr. Burgess's consultative

39

examination which took place on November 8, 2019 (see Tr. 442-47), x-ray evidence which occurred on December 2, 2019 (see Tr. 448-50), and requests to Plaintiff, her counsel, and "RALEIGH," which do not indicate 1) what evidence the SSA requested from those sources, or 2) whether the evidence had been received. (See Tr. 239; see also Tr. 216, 226, 250 (similar lists of requested evidence contained in state agency determinations).)[13]  Indeed, as of the date of the state agency determination cited by Plaintiff, February 12, 2020 (see Tr. 245), the record already contained Dr. Burgess' consultative report (see Tr. 238 (indicating report received 11/13/19)), despite the report's presence in the list of requested evidence (see Tr. 236).  Additionally, although the state agency consultants found "that a consultative examination was necessary, because '[t]he evidence as a whole, both medical and non-medical [wa]s not sufficient to support a decision on the claim'" (Docket Entry 11 at 9 (quoting Tr. 217, 239)), Dr. Burgess completed that examination (see Tr. 442-47), and the state agency consultants did not thereafter find that insufficient evidence existed to adjudicate Plaintiff's claims (see Tr. 214-33, 236-57).  Moreover, because, as discussed above, the ALJ's consideration of the New

_____

[13] As the record and New Evidence does not include treatment by any providers in Raleigh, North Carolina (see Tr. 8-138, 160-90, 442-913), "RALEIGH" likely referred to the North Carolina Disability Determination Services ("DDS"), which is located in Raleigh and "is a division of the [North Carolina] Division of Health and Human Services" and "makes medical determinations for Social Security and state Medicaid Disability claims."  https://www.ncdhhs.gov/divisions/disability-determination-services (last visited Dec. 13, 2023).

Evidence would not have resulted in a different outcome in Plaintiff's claims, that evidence, even if considered by the state agency consultants, would have not changed their determinations, which distinguishes this case from Jelinek, Blakley, Morales, Smith, and Vasquez, see Jelinek, 662 F.3d at 812; Blakley, 581 F.3d at 409; Morales, 225 F.3d at 319-20; Smith, 735 F.2d at 316; and Vasquez, 701 F.2d at 736.

In sum, because Plaintiff has not shown prejudice resulting from the ALJ's failure to fulfill her duty to develop the record, Plaintiff's second issue on review falls short.

### 3. Federal Vacancies Reform Act

Lastly, Plaintiff maintains that "the ALJ and Appeals Council judges had no legal authority to adjudicate this case because they were not properly appointed." (Docket Entry 11 at 10 (block formatting, initial capitals, and underscoring omitted).) In particular, Plaintiff contends that "the ALJ and Appeals Council members were not properly appointed by former Acting Commissioner Nancy Berryhill nor [sic] by any subsequent Commissioner or Acting Commissioner," because then-Acting Commissioner Berryhill's "term as Acting Commissioner ended . . . on November 16, 2017" under Section 3346(a) of the Federal Vacancies Reform Act ("FVRA"). (Id. (citing 5 U.S.C. § 3346(a)).) According to Plaintiff, "[d]espite not being Acting Commissioner under the FVRA after November 16, 2017, on July 16, 2018[, ] Berryhill purported to properly appoint

[the] SSA's ALJs and Appeals Council judges." (Id. (citing Social Security Ruling 19-1p, Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council, 2019 WL 1324866, at *2 (Mar. 15, 2019) ("SSR 19-1p")).) Plaintiff thus argues that "none of th[o]se adjudicators were ever properly appointed by an official with any valid legal authority to do so" and, "[t]herefore, [] had no legal authority to adjudicate [Plaintiff's] disability application." (Id. at 11 (citing Brian T.D. v. Kijakazi, 2022 WL 179540 (D. Minn. Jan. 20, 2022) (unpublished), and Richard J.M. v. Kijakazi, 2022 WL 959914 (D. Minn. Mar. 30, 2022) (unpublished)).)

As the Commissioner recognized by submitting the Notice of Supplemental Authority (Docket Entry 17):

> [T]he Eighth Circuit . . . expressly rejected the approach taken by [the Brian T.D. and Richard J.M. cases from] the District of Mi[nnesota] in Dahle v. Kijakazi, 62 F.4th 424, 426 (8th Cir. 2023)[, reh'g and reh'g en banc denied, 62 F.4th 424 (8th Cir. Mar. 7, 2023), pet. for cert. filed, No. 23-173 (U.S. Aug. 24, 2023)], explaining that the FVRA permits an acting official to serve during the pendency of a first or second nomination even when that nomination was submitted after the initial 210-day period for acting service has expired. Dahle, 62 F.4th at 429-430. The Eighth Circuit held, therefore, that Ms. Berryhill was validly serving as Acting Commissioner when she ratified the appointments of [ALJ]s for the [SSA] and approved them as her own. See id. The authority from the District of Minnesota on which [Plaintiff] based her FVRA argument therefore no longer supports her position.

<u>Laura S. v. Kijakazi</u>, No. 2:22CV272, 2023 WL 6144853, at *13 (S.D.W. Va. Aug. 31, 2023) (unpublished), <u>recommendation adopted</u>, 2023 WL 6142362 (S.D.W. Va. Sept. 20, 2023) (unpublished).

More significantly, as acknowledged by the Commissioner in filing the Second Notice of Supplemental Authority (Docket Entry 19):

> [O]n April 11, 2023, after the parties submitted their memoranda in this matter, the Fourth Circuit joined 'the Eighth Circuit and the growing number of district courts that have rejected' Plaintiff's view. <u>Rush v. Kijakazi</u>, 65 F.4th 114 (4th Cir. 2023)[, <u>pet. for cert. filed</u>, No. 23-243 (U.S. Sept. 14, 2023)]. In <u>Rush</u>, the plaintiff-claimants' social security disability applications were rejected by ALJs whose appointments had been ratified by Ms. Berryhill . . . . The plaintiff-claimants argued that Ms. Berryhill was not legally serving as Acting Commissioner when she ratified the ALJs' appointments because her period of service under 5 U.S.C. § 3346(a)(1) had expired. However, the Fourth Circuit rejected this argument and . . . held that '[a]n acting officer may serve while a nomination is pending in accordance with § 3346(a)(2) regardless of whether her service under § 3346(a)(1) expired before the nomination was submitted.' Berryhill therefore was properly serving as SSA Acting Commissioner when she ratified the ALJs' appointments.

<u>Stephanie A. v. Kijakazi</u>, No. 3:22CV414, 2023 WL 5124692, at *12 (E.D. Va. July 24, 2023) (unpublished) (internal citations omitted) (missing quotation mark added), <u>recommendation adopted</u>, 2023 WL 5109545 (E.D. Va. Aug. 9, 2023) (unpublished).

Put simply, binding authority from the Fourth Circuit forecloses relief on Plaintiff's third issue on review.

### III.  CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgment Reversing and Modifying the Decision of the Commissioner of Social Security (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

January 9, 2024